**Ex parte Donald Dee COLLIER.**

**No. 66532.**

Court of Criminal Appeals of Texas, En Banc.

April 15, 1981.

Rehearing Denied May 6, 1981.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This proceeding is brought under Article 11.07, V.A.C.C.P., as a post-conviction application for habeas corpus.

In his application filed originally in the trial court, appellant contends, inter alia, that at the time of his plea of guilty before the court in the 242nd District Court the attorney representing the State did not sign the consent form for him to waive trial by jury as required by Article 1.13, V.A.C.C.P., and that his guilty plea was thus invalid.

The State filed no answer to the habeas corpus application, and the trial court took no action whatsoever on the application and subsequent application for writ of habeas corpus. The record was then forwarded to this court. On December 23, 1980, this court ordered the trial court to develop additional facts with regard to petitioner's claim, suggesting the court might do this by affidavit, depositions, interrogatories, personal recollection or by an evidentiary hearing.

The judgment reflects that on May 30, 1978 petitioner entered a guilty plea before the court to the offense of aggravated rob-

bery and was assessed a punishment of 22 years' confinement in the Department of Corrections. The judgment reflects that all parties being present including the petitioner and his counsel "and it appearing to the Court that the Defendant, his counsel, and the State's attorney have agreed in writing in open court to waive a jury in the trial of this cause and to submit this cause to the Court; and the Court having consented to the waiver of a jury herein, the indictment was read, and the Defendant entered his plea of guilty thereto...."

Sentence was pronounced and entered on the same day reflecting the conviction for aggravated robbery and imposing the indeterminate sentence of not less than five (5) nor more than twenty-two (22) years.

On March 26, 1981, the affidavits of petitioner's appointed counsel at the time of the guilty plea, the affidavit of the former district attorney, a jury waiver form, and the findings and order of the trial court were received in a supplemental transcript. The trial court recommended relief be denied.

The jury waiver form found attached to petitioner's pleadings and shown to have been recorded in "Vol B 1 Page 403" and now reflected to be the jury waiver form utilized by a second supplemental transcript reads as follows:

"APPLICATION TO WAIVE TRIAL
BY JURY

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Donald Dee Collier, Defendant in the above styled and numbered cause, in open court, and after obtaining the advice of his counsel, and hereby requests the consent and approval of the Court and of the attorney for the state for Defendant to waive his right to trial by jury herein, and does hereby upon the consent of the Court and the attorney for the State waive trial by jury herein; and Defendant further waives the right to ten (10) days time for preparation for trial after appointment of counsel and arraignment.

/s/   Donald D. Collier

DEFENDANT
/s/   Rudd F. Owen
ATTORNEY FOR DEFENDANT

CONSENT OF ATTORNEY FOR STATE

Before the said Defendant enters his plea to the indictment herein, the above request of the Defendant and his attorney herein is hereby consented to, and approved by me, the undersigned attorney representing the State of Texas.

_____
DISTRICT ATTORNEY

APPROVAL OF COURT

The Court having considered the above and foregoing Application to Waive Trial by Jury filed herein by the Defendant and his attorney, and the same having been consented to by the attorney for the State of Texas, the Court hereby approves said Application.

Signed and entered this 30 day of May, 1978.

/s/   Van Stovall
JUDGE PRESIDING"

The affidavit of the district attorney states in part there was a plea bargain and further states: "The State agreed to waive trial by jury and tendered the waiver and other plea papers to the Court. The copy filed was inadvertently not signed by me." The trial judge who made the findings, though not the trial judge at the time of the guilty plea, made the following finding: "8. The District Attorney and the State through him waived trial by jury even though the signature of the District Attorney does not appear on the waiver."

Included in the first supplemental transcript as an exhibit to the district attorney's affidavit is a jury waiver form as set out above except that this form is signed by the district attorney giving consent to the said waiver. According to the affidavit the form is from the district attorney's office file.

Article 1.13, V.A.C.C.P. [Waiver of trial by jury], provides:

"The defendant in a criminal prosecution for any offense classified as a felony less than capital shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that such waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the State. The consent and approval by the court shall be entered of record on the minutes of the court, *and the consent and approval of the attorney representing the State shall be in writing, signed by him, and filed in the papers of the cause before the defendant enters his plea.* Before a defendant who has no attorney can agree to waive the jury, the court must appoint an attorney to represent him." (Emphasis supplied.)

The forerunner of Article 1.13, supra, was Article 10a of the 1925 Code of Criminal Procedure. It read:

"The defendant in a Criminal prosecution for any offense classified as a felony less than a capital offense, shall have the right, upon entering a plea of guilty, to waive the right of a trial by a Jury, conditioned, however, that such waiver must be made in person by the defendant in open Court with the consent and approval of the Court and the duly elected and acting Attorney representing the State. Provided, that said consent and approval by the Court shall be entered of record on the Minutes of the Court and the consent and approval of the Attorney representing the State shall be in writing, duly signed by said Attorney and filed in the papers of the Cause before the defendant enters his guilty plea.

"Provided, that before a Defendant who has no Attorney can agree to waive a Jury, the Court must appoint an Attorney to represent him." (Acts 1931, 42nd Leg., p. 65, ch. 43, § 1).

§ 8 of S.B. 53 codifying Article 10a in 1931 provided:

"Sec. 8. The fact that under present laws, a defendant is not permitted, upon entering a plea of guilty, to waive the right of trial by jury, and in order to reduce the expense of law enforcement and to hasten the disposition of felony cases wherein pleas of guilty are entered, creates an emergency and imperative public necessity that the Constitutional Rule which requires bills to be read on three several days be suspended and said Constitutional Rule is hereby suspended and this Act shall take effect and be in full force from and after its passage, and it is so enacted."

It is obvious that Article 10a, supra, was added to the 1925 Code of Criminal Procedure to eliminate the necessity of jury trials in felony cases where the defendant wished to plead guilty, did not desire a trial by jury, and the prosecutor consented and the court approved such procedure. The defendant was protected by being represented by counsel and required to make his waiver in open court, though not in writing. The State was protected because a non-jury case could not be had without the prosecutor's consent, and the court was given the right of approval over such non-jury proceeding.

Article 10a, supra, was amended in 1959, but its changes do not affect the question before us. (See Acts 1959, 56th Leg., 3rd C.S., p. 377, ch. 2, § 1).

Article 1.13, supra, of the 1965 Code of Criminal Procedure followed in the wake of the 1959 amendment with certain changes.

In *Waldrop v. State*, 129 Tex.Cr.R. 134, 83 S.W.2d 974 (1935), the defendant raised the question on direct appeal that the State's Attorney had not given his written consent to the defendant's waiver of trial by jury upon the plea of guilty. The judgment recited, however, the prosecutor had given such written consent. The judgment was affirmed. On rehearing the court noted the bill of exception relied upon by the defendant contained the following qualification by the trial court:

"The above bill is approved only with the following explanation and modification, to-wit: The defendant and his attorney together with the district attorney in open court represented that they each and all desired to waive a jury and try

the case before the court, and that the required papers had been signed. The cause was tried with all parties and attorneys participating and the presentation of this bill on November 23rd was the first intimation the court ever had of any claimed irregularity. The court cannot certify that the required written consent to waiving jury and trying to the court was filed or was not filed. I understand no such paper is now found among the filed papers in the case but I cannot certify whether it was filed and has been lost, misplaced, or destroyed, or was never filed."

The court held in view of this qualification and in light of the record the recitals in the judgment would be regarded as binding and as stating the facts. The rehearing was denied.

In *Thompson v. State*, 152 Tex.Cr.R. 273, 226 S.W.2d 872 (1950), on direct appeal, this court, although reversing also on another ground, stated:

"The record fails to show the consent in writing of the attorney for the State to the waiver of a jury as required by Art. 10a, Vernon's Ann.C.C.P. The filing of such written consent is a prerequisite to a trial without a jury in a felony case."

No authorities were cited.

The above cases involved direct appeals.

In *Ex parte Dooley*, 157 Tex.Cr.R. 57, 246 S.W.2d 631 (1952), a post-conviction habeas corpus proceeding, there was an entire absence in the judgment as to any reference as to the requirement of Articles 10a or 12, V.A.C.C.P. Apparently the record also did not show a compliance with such statutes, but the opinion does not so reflect. The court wrote:

"These requirements are mandatory, and requisite to a valid judgment, upon a plea of guilty before the court in an ordinary felony case."

In *Ex parte Foster*, 162 Tex.Cr.R. 191, 283 S.W.2d 761 (1955), a post-conviction habeas corpus proceeding, the judgment recited compliance with Article 10a, supra, but the assistant district attorney testified he had been unaware of the law and had not filed such written consents for some time, but had recently commenced to do so, but could not remember whether he had done so in the *Foster* case. There was other evidence. The court held that, despite the recitation of the judgment, the petitioner had shown a failure to comply with Article 10a, supra, then in effect. The conviction was set aside. In *Ex parte Turner*, 290 S.W.2d 520 (Tex.Cr.App.1956), a post-conviction habeas corpus proceeding, the court noted the proceedings were "almost identical in every respect" with *Foster* and granted relief.

In *Ex parte Marzulla*, 170 Tex.Cr.R. 636, 343 S.W.2d 701 (1961), the petitioner was granted habeas corpus relief where there was a failure to comply with the requirements of Article 10a, supra, and the State's Attorney did not sign and file consent to the defendant's waiver of trial by jury.

In *Ex parte Johnson*, 164 Tex.Cr.R. 33, 296 S.W.2d 239 (1956), habeas corpus relief was denied. The judgment recited compliance with Article 10a, supra, with regard to the State's written consent to the jury waivers. Court papers, however, had been moved from one building to another since the trial, and the clerk, the regular prosecutor in said court an the trial judge all testified of the practice of careful compliance with Article 10a, supra, over a long period of time. *Johnson* distinguished *Dooley* where not even the judgment reflected compliance and distinguished the proof from that in *Foster* where there had been a long practice of failing to file the State's written consent. There was nevertheless a dissenting opinion.

In *Ex parte Hobbs*, 364 S.W.2d 239 (Tex. Cr.App.1963), no written consent of the State to the jury waiver was found in the file. The judgment, however, reflected such consent was given in writing. There was a similar entry on the docket sheet. While the testimony from the clerk, prosecutor and judge as to the court's practice was not as strong as in *Johnson* and while Hobbs related there was no mention of a jury trial to him, relief was denied. Here

again, *Ex parte Foster,* supra, was distinguished.

*Ex parte Smith,* 449 S.W.2d 266 (Tex.Cr. App.1970), presented a far stronger factual situation than either *Johnson* or *Hobbs.* The *Smith* judgment reflected a careful compliance with Article 10a, supra. The trial judge testified that an executed jury waiver had been exhibited to him, the signatures acknowledged and the same had been filed, and only thereafter had he personally entered on the docket sheet the notation "Jury waived." He further testified it was always his practice to require the State's written consent to a jury waiver by an accused and to have the same filed before accepting a plea of guilty. There was other testimony that this particular trial judge's careful compliance with Article 10a, supra, was not only a custom, but almost a ritual. Even though years after the guilty plea was taken the written consent of the prosecutor to the jury waiver was not found in the papers of the court, *Johnson* held this did not call for relief in light of the above facts.

*Gonzalez v. State,* 508 S.W.2d 388 (Tex. Cr.App.1974), involved a direct appeal from an order revoking probation. There the defendant, in a collateral attack, urged that the underlying conviction was void because the district attorney had not signed the consent to the waiver of trial by jury form. Without discussing whether a collateral attack was valid under such circumstances,[1] the court wrote:

"Appellant notes that the attorney for the State did not sign a form included in the record showing his consent to the waiver of jury trial in appellant's original conviction. See Article 1.13, Vernon's Ann.C.C.P. He says this shows that the attorney for the State did not consent in writing to the jury waiver. We note that appellant did not raise this alleged infirmity after the original conviction, but brings the question to our attention for the first time on appeal of the probation

revocation. The waiver form itself, signed by appellant, states that the appellant has 'obtained the consent and approval of the attorney representing the State' to the jury waiver. The Court's approval of the waiver also states that the written consent of the attorney representing the State has been duly signed by him and filed with the papers in the cause before appellant's plea. Finally, the judgment in the cause states that a written consent to jury waiver has been signed by the attorney for the State and filed with the papers in the cause. We do not think it has been shown that the attorney for the State failed to consent in writing to jury waiver in the original cause. See *Ex parte Smith,* 449 S.W.2d 266 (Tex.Cr.App.1970); *Ex parte Johnson,* 164 Tex.Cr.R. 33, 296 S.W.2d 239 (1956)."

In *Gonzalez* this court was saying that even if the jury waiver form found in the record did not reflect the written signature of the prosecutor giving consent, other portions of said form as well as the judgment indicated that the prosecutor had given consent in writing to the waiver of the jury trial by the accused, and that under the record as a whole there was no showing of a failure to comply with Article 1.13, V.A.C. C.P., 1965 (formerly Article 10a, supra).

It is clear that in the past convictions have been set aside on direct appeal where the State's written consent to the jury waiver is not in the record (see e. g., *Thompson v. State,* supra) and on collateral attack by writ of habeas corpus where the relator or petitioner demonstrated that there was no such written consent despite the recitals in the judgment to the contrary (see e. g., *Ex parte Foster,* supra; *Ex parte Turner,* supra).

■ The instant case, like *Gonzalez,* contains a judgment reciting that the State did give written consent to the jury waiver, and there was other evidence on the jury waiver form also so indicating. Unlike *Gonzalez,*

1. See *Standley v. State,* 517 S.W.2d 538 (Tex. Cr.App.1975); *Traylor v. State,* 561 S.W.2d 492 (Tex.Cr.App.1978); *Morgan v. State,* 571

S.W.2d 333 (Tex.Cr.App.1978); *Lee v. State,* 589 S.W.2d 710 (Tex.Cr.App.1979).

however, under this court's order to the trial court to develop the facts, we have the affidavit of the district attorney that he consented to such jury waiver but the "copy filed was inadvertently not signed by me." The court found the State "waived trial by jury even though the signature of the District Attorney does not appear on the waiver."

The petitioner does not contend he desired a jury trial and was deprived of the same. He does not deny that he waived trial by jury. The evidence is undisputed the prosecutor consented to the waiver of trial by jury by the petitioner, and the petitioner does not claim otherwise. What is missing is the signature of the district attorney to the written form.

The question presented by this proceeding is whether a petitioner in a collateral attack by post-conviction writ of habeas corpus may have his prior felony conviction upon a plea of guilty or nolo contendere or any plea set aside because the district attorney, though consenting to the waiver of a jury trial, failed to sign any written form indicating such consent. Under the past authorities this would seem to call for a reversal under the terms of Article 1.13, supra, and its forerunners.

The change brought about by Article 10a, supra, in 1931 permitted the defendant in a non-capital felony case to waive trial by jury and enter a guilty plea before the court. Then a defendant in a felony case under certain circumstances could be punished by confinement in the penitentiary without a jury of his peers passing upon the matter of punishment. For the benefit of the State, however, the prosecution was also given the benefit or right of first consenting to such waiver before a non-jury trial. See *Ex parte Smith*, supra. This was to insure that both parties in a non-capital felony criminal case had to agree if there was to be no jury trial. Obviously to avoid controversy as to the State's agreement, its consent to the jury waiver was to be made manifest of record by being in writing signed by the prosecutor and filed among the papers of the cause.

Article 1.13, supra, now applies to any plea before the court in a non-capital case where a jury is waived.

We conclude that it would be ridiculous to set aside a conviction as in the instant case based merely upon the missing signature of the district attorney when it is obvious that the State did indeed consent to the jury waiver.

█ We hold that in the absence of a showing of harm a valid conviction may not be set aside by habeas corpus or collateral attack merely because the State failed to sign the consent to the jury waiver of a defendant as required by Article 1.13, V.A.C.C.P., where the evidence does show that the State did in fact agree to such waiver. All cases to the contrary so holding are overruled to the extent of the conflict.[2]

The relief prayed for is denied.[3]

---

2. Every effort should be made by the State to comply with Article 1.13, V.A.C.C.P., and trial courts should be careful to examine all instruments offered in a plea before the court to see if in fact the State has filed a written consent to the jury waiver. These few minutes would avoid many hours of briefing on both sides and many hours of research and consideration later by this court including the writing of opinions. Much time in our law enforcement system could be saved by a few minutes of examination and consideration of the instruments filed even if it is a guilty plea.

3. In his habeas corpus application appellant also asserts his guilty plea was not knowingly and voluntarily entered because he did not know what offense to which he was pleading. He contends he was led to believe he was pleading guilty to aggravated assault when in fact he was convicted of aggravated robbery and assessed a punishment of twenty-two (22) years' imprisonment. The body of the indictment charges aggravated robbery and the judgment and the sentence reflect a conviction for aggravated robbery. The affidavit of the court-appointed counsel shows the petitioner agreed to plead guilty to aggravated robbery and denied he would have pled guilty to an offense not charged and for the penalty assessed. Petitioner relied upon the endorsement upon the back or outside of the indictment form which shows the offense to be "aggravated assault with a deadly weapon" and upon the docket sheet which reflects the same offense. The court denied an earlier motion to correct the judgment and sentence finding a clerical error on the endorsement of the indictment and

CLINTON, Judge, concurring.

Once again a majority of the Court shatters a part of a monumental legislative enactment by substituting "*should*" for "*shall.*"[1] Recently *Dinnery v. State,* 592 S.W.2d 343, 349 (Tex.Cr.App.1979, 1980, Opinion on Rehearing on Court's Own Motion)[2] and *Craven v. State,* 607 S.W.2d 527 (Tex.Cr.App.1980) interred Article 1.15, V.A.C.C.P. Today Article 1.13 is done in.

In finding the genesis and purpose of the 1931 amendatory act,[3] the majority is essentially correct. Yet, that act of the Legislative Department marked such radical turn in the prior unswerving historical course of public insistence on the right of trial by jury in criminal cases[4] that it immediately came under heavy attack in the courts. It was soon saved by the Judicial Department through a steady barrage of the waiver doctrine:[5] *McMillan v. State,* 122 Tex.Cr.R. 583, 57 S.W.2d 125 (1933); *Hardin v. State,* 57 S.W.2d 127 (Tex.Cr.App.1933); *Bolton v. State,* 123 Tex.Cr.R. 543, 59 S.W.2d 833 (1933); *Dabney v. State,* 124 Tex.Cr.R. 21, 60 S.W.2d 451 (1933). The irony is that before long protective portions of the same act were being assaulted by its erstwhile defender, and curiously enough the majority opinion is a litany of the blows struck in

the favor of "practice" over procedure, ritualism for right, ridicule in lieu of requisite.

Fifty one years later, what remains of the 1931 act is honored more in its breach— "the good is oft interred with their bones." And my lament is not so much that the Court is "legislating" the demise of the act as it is that the majority pretends it still has enough vitality such that "[e]very effort *should* be made" to comply with it, Opinion for the Court, n. 2. This kind of precatory admonition shames the certitude usually insisted of the rule of law. In my judgment to sanction "substantial compliance" is to provide succor to expediency, and thereby denigrate one of the legislatively expressed purposes of our code of criminal procedure, i.e., "to make the rules of procedure . . . intelligible to the officers who are to act under them, and to all persons whose rights are to be affected by them," Article 1.03, V.A.C.C.P., to the end that—Must it be added?—the rules are honored in implementation of the constitutional promises of due process and due course of law.

However, on a more pragmatic note— and, given the spotty "substantial compliance" in the past of this very case, we

docket sheet as to the nature of the offense and finding such entries did not mislead. In the court's findings in the habeas corpus proceedings it found such entries to be erroneous. We overrule appellant's contention he didn't know to what offense he was pleading.

1. All emphasis is mine unless otherwise indicated.

2. How a development came about sometimes tells much more than its substance.

3. Acts 1931, 42nd Leg., p. 65, ch. 43 contained eight sections, the first seven of which made several changes in provisions of the criminal procedural codes that date from the first one adopted in 1856, amended in 1858 and collected in Oldham & White, Digest Laws of Texas, published in 1859 by legislative authority. Together they were designed, as the Section 8 emergency clause states, "to reduce the expense of law enforcement and to hasten the disposition of felony cases wherein pleas of guilty are entered"—most salutary objectives which most of us in the criminal justice system still strive to achieve.

4. See generally, *Thornton v. State,* 601 S.W.2d 340, 345–346 (Tex.Cr.App.1979, 1980, Opinion on Motions for Rehearing).

5. Though certainly not the first time, *Moore v. State,* 22 Tex.Cr.R. 117, 2 S.W. 634 (1886) is a typical early application of the doctrine in this State to the trial of a miscreant who pleaded guilty to the charged misdemeanor, waived trial by jury and asked the court to assess punishment; but since the State objected the court impressed a jury trial on the accused. The resultant conviction in Travis Court was reversed with an opinion by White, P. J.:

"Because the court deprived the defendant of his *right* to have his case tried, upon his plea of guilty, by the court, without a jury, the judgment is reversed, and the cause is remanded."

Nowadays, of course, it is held that an accused is not constitutionally entitled to have his guilty plea accepted. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

surely must be as practical as reasonably permitted by law—because in more recent times the Court has rendered directory rather than mandatory the provisions of Articles 1.13 and 1.15 and other articles in the Code of Criminal Procedure that dovetail with them, I would hold complaints about failure to comply with them by an accused who entered his plea after proper admonishment are not cognizable by post-conviction writ of habeas corpus for, even if factually supported, they will not make restraint under the judgment of conviction illegal.[6] In this way we are relieved of the embarrassment of saying the law is not really what it was so clearly intended to be.

Accordingly, I concur in the judgment of the Court.

TEAGUE, Judge, dissenting.

There are many things in our criminal justice system and in our statutes that may appear facially to be ridiculous or illogical. But, that does not mean that this Court should legislate when our sole function is to adjudicate.

This statute is mandatory and the majority recognizes this in its opinion, but because it is a "ridiculous" law, by its opinion, we are asked to nullify this Court's past decisions and allow the prosecutor to supplement this record, at this late date, by pulling a document from his file that purports to meet the requirements of the statute. This is not what the statute permits as it requires in part: "... and the consent and approval of the attorney representing the State <u>shall be in writing, signed by him, and filed in the papers of the cause</u> before the defendant enters his plea." (Emphasis underscored.) Where do we draw the line on mandatory statutes? If we, as judges, believe that the law needs changing, then there is a forum approximately 200 yards from our front door called the Legislature where we might go and request the law be changed because it is "ridiculous." But it is not our function to act in the place of that body, which is what the majority asks us to do by this opinion.

When a statute mandatorily requires a written waiver to be signed by the prosecuting attorney, but there is, as here, no evidence indicating that such waiver was signed and filed in the papers of the cause, the conviction should be reversed, if the case is on direct appeal, or a post conviction writ of habeas corpus should be granted if the issue is raised collaterally. That is what the statute demands and we have no power or authority to change that law, albeit its ridiculousness.

I dissent with all the vigor at my command to this proposed legislative action on the part of this Court.

---

**6.** "The writ does not reach such errors or irregularities as would render a judgment voidable only, but only such illegalities as render it void; that is, radical defect; that which is contrary to the principles of law, as distinguished from mere rules of procedure; that which constitutes a complete defect in the proceedings, and not a mere irregularity in the proceedings. If the judgment is void the writ may be resorted to. [citing a host of cases]," 1 Vernon's Constitution of Texas 318, Article I, § 12, n. 11.